UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JAMES WHORTON,

        Plaintiff,

v.                                Case No. 2:07-cv-18
                                       HON. R. ALLAN EDGAR

WARDN BOUCHARD, et al.,

        Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff James Whorton filed this prisoner 42 U.S.C. § 1983 action against defendants Warden Bouchard, Deputy Warden Bergh, RUO Berg, RUO Wickstrom, RUM Bauman, ADW Bobo, Lt. Nord, Lt. Nayback, Captain Inmuel, Captain Jones, and Sergeant Odell.  Plaintiff alleges that between September 4 and September 7, 2004, he was handcuffed and in leg shackles.

Plaintiff alleges that defendants RUO Berg, RUO Wickstrom, RUM Bauman, Captain Jones, Sergeant Odell, Warden Bouchard, Deputy Warden Bergh, and ADW Bobo harassed plaintiff because plaintiff was a witness for prisoner Royster who had allegedly been assaulted by staff. Plaintiff alleges that defendants attempted to coerce him to withdraw his statement and threatened his life.  Plaintiff claims that the harassment affected him mentally and physically, causing him to make a suicide attempt.  Plaintiff states that RUM Bauman came to his cell and stated to plaintiff that everything would return to normal if he took back his statement.  When plaintiff refused he was punished.  On September 3, 2004, plaintiff was tear gassed and placed in handcuffs and shackles. Sergeant Odel told plaintiff to stop crying and take it like a man. Plaintiff alleges that the shackles

caused him pain and were not warranted.  Plaintiff alleges that the unit log books were fabricated to indicate that plaintiff was being disruptive.  Plaintiff alleges that he now has nerve damage in his upper and lower extremities.  Plaintiff alleges that defendant Captain Jones visited his cell on September 6, 2004, and made a derogatory statement to plaintiff, and then fabricated the log book to justify keeping plaintiff in restraints.  Plaintiff sent Warden Bergh a letter concerning this incident.

Allegedly, non-defendant RUO Taskila set up plaintiff on September 28, 2004, by placing plaintiff in hard restraints for kicking the door.  RUO Taskila allegedly stated that defendant Berg asked him to do this because he owed defendant Berg a favor.  Plaintiff alleges that he was kept in hard restraints for three days.  Plaintiff states that he notified Warden Bochard, Deputy Warden Bergh and ADW Bobo that this happened and nothing was done.  Plaintiff is in fear of his life and seeks transfer to a different prison.  Plaintiff alleges that he was also denied electricity for lighting in his cell.  As a result of the denial of electricity, plaintiff claims that he experienced migraine headaches and dizzy spells.  Plaintiff requests damages of $75,000 from each defendant and that all major misconduct infractions be deleted from his file.

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial.  *Id.* at 324-25.  The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial."  *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).  The evidence must be viewed in the light most favorable to the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendants Nord, Jones and Inmuel concede that plaintiff exhausted his claims against them for placing plaintiff in restraints without cause and for keeping the restraints too tight. Plaintiff was placed in hard restraints because he was being disruptive by banging on his light above the sink in his cell. Plaintiff had been placed in soft restraints on August 24, 2004 after destroying a light fixture and two windows in his cell. Hard restraints were used because soft restraints had been ineffective. Plaintiff continued to be disruptive and threatened to damage his cell fixtures if he was let out of his restraints.

The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *See Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981); *Trop v. Dulles*, 356 U.S. 86, 101 (1958). The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346. Among unnecessary and wanton infliction of pain are those that are "totally without penological justification." *Id.*

- 3 -

Plaintiff's claim involving the use of restraints must be analyzed under the Supreme Court authority limiting the use of force against prisoners. This analysis must be made in the context of the constant admonitions by the Supreme Court regarding the deference that courts must accord to prison or jail officials as they attempt to maintain order and discipline within dangerous institutional settings. *See, e.g.*, *Whitley*, 475 U.S. at 321-22.

Generally, restrictions and even harsh conditions of confinement are not necessarily cruel and unusual punishment prohibited by the Eighth Amendment. *Rhodes*, 452 U.S. 347. The Supreme Court has held that "whenever guards use force to keep order," the standards enunciated in *Whitley*, 475 U.S. 312, should be applied. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. In determining whether the use of force is wanton and unnecessary, the court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any efforts made to temper the severity of the forceful response. *Id.* (citing *Whitley*, 475 U.S. at 321); *accord McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990). Physical restraints are constitutionally permissible where there is penological justification for their use. *Rhodes*, 452 U.S. at 346; *Jones v. Toombs*, No. 95-1395, 1996 WL 67750, at *1 (6th Cir. Feb. 15, 1996); *Hayes v. Toombs*, No. 91-890, 1994 WL 28606, at * 1 (6th Cir. Feb. 1, 1994); *Rivers v. Pitcher*, No. 95-1167, 1995 WL 603313, at *2 (6th Cir. Oct. 12, 1995).

In numerous cases, the Sixth Circuit has held that restraints were penologically justified where in light of the inmate's disruptive behavior, the inmate continued to pose a threat. *See Hayes*, 1994 WL 28606, at *1 (significant threat of further destructive behavior justified application of top-of-bed restraints against inmate); *Harris v. Ohio Dep't of Rehab/Corr.*, No. 91-

3920, 1992 WL 56999, at *2 (6th Cir. Mar. 24, 1992) (requiring inmate to wear restraint belt during visits was penologically justified); *Boswell v. Vidor*, No. 89-2372, 1990 WL 143501, at *1 (6th Cir. Oct. 2, 1990) (placing inmate in full restraints for twelve hours was justified where inmate had disobeyed a direct order by repeatedly refusing to return plastic gloves given to him for cleaning his cell); *Syncate-El v. Toombs*, No. 92-1421, 1992 WL 301270, at *2 (6th Cir. Oct. 21, 1992) (use of body chains during non-contact visits was justified in light of significant threat of further assaultive behavior given inmate's history of disruptive behavior); *see Rivers*, 1995 WL 603313, at *2 (top-of-bed restraints were appropriate even after inmate discontinued his earlier abusive, disruptive, and threatening behavior).

Plaintiff had engaged in a pattern of disruptive behavior.  Plaintiff had broken the lights in his cell and two windows less than two weeks before his placement in hard restraints. Plaintiff was placed in soft restraints at that time.  Plaintiff again broke a light on September 3, 2004. As a result, hard restraints were placed on plaintiff.  Plaintiff was checked every fifteen minutes by staff and at least once a shift by a member of the nursing staff.  The record is clear that plaintiff was placed in restraints due to his disruptive behavior.  Moreover, plaintiff has failed to show that he suffered any physical harm from the placement in restraints.

Defendants Nord, Jones and Immel have also moved for qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  An "objective reasonableness"

test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

The procedure for evaluating claims of qualified immunity is tripartite:  First, we determine whether a constitutional violation occurred;  second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights. *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999).

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits. *Dietrich*, 167 F.3d at 1012.  An official action is not necessarily protected by qualified immunity merely because the very action in question has not previously been held to be unlawful.  Rather, in light of pre-existing law, the unlawfulness of the official's conduct must be apparent. *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff.  Part of the analysis is to determine whether there are any genuinely disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998).  Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge.  "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.*

The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of the preexisting law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40.  *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997).

The Sixth Circuit has observed:

> A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus qualified immunity is not triggered only where the very action in question was previously held unlawful.  *Anderson*, 483 U.S. at 639-40.  Rather, the test is whether the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violated plaintiff's federal rights.  *Id.*

Furthermore, a defendant need not actively participate in unlawful conduct in order to be liable under Section 1983.  Rather, a defendant may be liable where he has a duty to protect a plaintiff and fails to comply with this duty.  *Durham*, 97 F.3d at 866-868 (holding that a nurse and a security guard at a state hospital may be liable under Section 1983 where they do not take action to prevent a patient from being beaten).  *See also McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990)(a correctional officer who observes an unlawful beating may be liable under Section 1983 even though he did not actively participate in the beating), and *Bruner v. Dunaway*, 684 F.2d 422

(6th Cir. 1982), *cert. denied sub nom*, *Bates v. Bruner*, 459 U.S. 1171 (1983)(police officers who stood by and observed an unlawful beating by fellow officers could be held liable under Section 1983).

When faced with a qualified immunity defense, the court must first determine whether or not the plaintiff has stated a claim upon which relief can be granted. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Turner*, 119 F.3d at 429. If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established. *Turner*, 119 F.3d at 429. These are both purely legal questions. The immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights. *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991). In the opinion of the undersigned, defendants Nord, Jones and Inmuel are entitled to qualified immunity on plaintiff's Eighth Amendment claims because plaintiff cannot establish that these defendants violated his constitutional rights.

Defendants have moved to dismiss for plaintiff's failure to exhaust grievance remedies. Defendant Jones moves to dismiss the claim that allegedly occurred on September 6, 2004 for lack of exhaustion and defendants Berg, Wickstrom, Bauman, Jones, O'Dell, Bouchard, Bergh and Bobo move to dismiss plaintiff's retaliation claims for lack of exhaustion. Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999).

In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 127 S. Ct. 910, 922-23 (2007); *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 127 S. Ct. at 922-23.

MDOC Policy Directive 03.02.130 (effective Dec. 19, 2003)[1], sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control *Id.* at ¶ R. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ R, X. The Policy Directive also provides the following directions for completing grievance forms: "The issues shall be stated briefly. Information provided shall be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ T (emphasis in original). The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within five business days of the response, or if no response was received, within five days after the response was due. *Id.* at ¶¶ R, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for

---

[1]The MDOC recently amended Policy Directive 03.02.130 on July 9, 2007. However, the 2003 version of the policy directive was in effect at all times applicable to this lawsuit.

a medical care grievances.  *Id.* at ¶ FF.  If the inmate is still dissatisfied with the Step II response, or

does not receive a timely Step II response, he may appeal to Step III using the same appeal form.

*Id.* at ¶¶ R, HH.  The Step III form shall be sent within ten business days after receiving the Step II

response, or if no Step II response was received, within ten business days after the date the Step II

response was due.  *Id.* at ¶ HH.  The Prisoner Affairs Section is the respondent for Step III grievances

on behalf of the MDOC director.  *Id.* at ¶ II.  Time limitations shall be adhered to by the inmate and

staff at all steps of the grievance process.  *Id.* at ¶ U.  "The total grievance process from the point

of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar

days unless an extension has been approved . . . ."  *Id.*

In addition, the grievance policy provides that, where the grievance alleges staff

brutality or corruption, the grievance may be submitted directly to Step III.  *Id.* at ¶ S.  In such

instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I.

*Id.*

Defendants have shown that plaintiff has failed to exhaust his retaliation claims.

Plaintiff's grievances concerning the acts of retaliation were rejected by the prison as procedurally

defective.  In the opinion of the undersigned, plaintiff's claims of retaliation were not exhausted and

should be dismissed.  Plaintiff clearly exhausted his grievances against defendant Jones regarding

the September 6, 2004, incident.  Contrary to defendants' assertion, these grievances were not

rejected as untimely.  However, for the reasons previously stated, defendant Jones is entitled to

dismissal on the merits of the case.  Plaintiff cannot support an Eighth Amendment claim against

defendant Jones.  Moreover, to the extent that plaintiff is asserting verbal harassment violated his

Eighth Amendment rights that claim also fails.  Claims of abusive language, or of general

harassment, do not state an eighth amendment or substantive due process violation.  *Ivey v. Wilson*,

832 F.2d 950 (6th Cir. 1987);; *Ishaaq v. Compton*, 900 F. Supp. 935, 944 (W.D. Tenn., 1995);

*Meadows v. Gibson*, 855 F. Supp. 223, 225 (W.D. Tenn., 1994); *Banks v. Klapish*, 717 F. Supp. 520

(W.D. Mich. 1989); *Gilson v. Cox*, 711 F. Supp. 354 (E.D. Mich. 1989); *Rahman v. Stephenson*, 626

F. Supp. 886, 888 (W.D. Tenn. 1986).  Even the occasional or sporadic use of racial slurs, although

unprofessional and reprehensible, does not rise to a level of constitutional magnitude.  *See*, *Torres*

*v. County of Oakland*, 758 F.2d 147, 152 (6th Cir. 1985).

It appears that plaintiff exhausted his claims regarding the turning off of his electrical

lighting.  However, it is clear that plaintiff was placed on this restriction after he broke the light

fixtures in his prison cell.  The restriction was justified based upon plaintiff' behavior.  In the

opinion of the undersigned, plaintiff cannot support an Eighth Amendment or retaliation claim on

this issue.

Accordingly, it is recommended that defendants' motion to dismiss and motion for

summary judgment (Docket #17 and #22) be granted.  It is recommended that plaintiff's Eighth

Amendment claims be dismissed with prejudice, that plaintiff's Eighth Amendment and retaliation

claim regarding electrical lighting be dismissed with prejudice, and that plaintiff's remaining

retaliation claims be dismissed without prejudice.

Further, if the court adopts this recommendation the court should decide that an

appeal of this action would not be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See*

*McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  For the same reasons that the court

grants defendants' motion for summary judgment, the court can discern no good-faith basis for an

appeal.  It is recommended that should the plaintiff appeal this decision, the court assess the $455

appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless plaintiff is

barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).  If he is

barred, he should be required to pay the $455 appellate filing fee in one lump sum.

        NOTICE TO PARTIES:  Objections to this Report and Recommendation must be

served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of

this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich.

LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal.

*United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140

(1985).


        /s/ Timothy P. Greeley
        TIMOTHY P. GREELEY
        UNITED STATES MAGISTRATE JUDGE

Dated:   February 19, 2008